**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CLIFTON WHITE,

     Plaintiff,

v.                                                    Case No. 21-cv-1207-SCY-JFR

GEOFFREY STONE, in his individual capacity,
ERIC BROWN, in his individual capacity,
FLORENCE MULHERON, in her individual capacity,
ELIJAH LANGSTON, in his individual capacity,
AARON VIGIL, in his individual capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT LANGSTON'S MOTION FOR JUDGMENT ON THE PLEADINGS

Following events at a Black Lives Matter protest he organized, Plaintiff Clifton White was arrested for parole violations. He argues the arrest was pretextual and brings claims against his parole officer, Defendant Elijah Langston, for violation of the Fourth Amendment (count VI) and conspiracy to violate civil rights (count VII).[1] Doc. 1-1. Defendant Langston moves for judgment on the pleadings based on qualified immunity. Doc. 25; *see also* Doc. 32 (response); Doc. 35 (reply). The Court agrees that qualified immunity shields Defendant Langston from these claims and, therefore, GRANTS his motion for judgment on the pleadings.[2]

---

[1] Plaintiff also initially brought a claim against Defendant Langston for violations of the Fourteenth Amendment (count V). After Defendant filed his opening brief, however, the parties agreed to dismiss Plaintiff's Fourteenth Amendment claims (count V) against Defendant Langston. Doc. 33. Therefore, the Court need not consider Defendant Langston's arguments addressed to that claim, including his arguments about absolute immunity for actions he took in connection with the parole hearing. *See* Doc. 25 at 11-12. Additionally, Defendant Florence Mulheron was initially a co-movant, but she has been dismissed from the lawsuit. Doc. 33.

[2] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), all parties consented to me serving as the presiding judge and entering final judgment in these cases. Docs. 11, 13, 14, 15, 16.

## BACKGROUND

The Court takes the following facts from Plaintiff's complaint, which the Court assumes are true for the purposes of the present motion and which the Court views in the light most favorable to Plaintiff. Doc. 1-1. On September 6, 2019, Plaintiff was released on parole. Doc. 1-1 ¶ 2.[3] Having experienced discrimination and inequity in the criminal justice system, he began organizing with the Black Lives Matter ("BLM") movement that same year. *Id.* ¶¶ 4, 7. On May 28, 2020, Plaintiff organized a large peaceful protest with this group, but some protesters became unruly after the protest's conclusion and set off aerial mortars. *Id.* ¶¶ 9, 11. Gunshots were fired; the police attributed them to a silver Kia Amanti and arrested the four teenage boys occupying the car. *Id.* ¶ 12. The police left the Kia in the street with the keys unsecured on top of the vehicle, so Plaintiff, as an organizer of the protest, attempted to secure the vehicle by driving it to the 400 block of Wellesley Boulevard SE. *Id.* ¶¶ 14, 16. Albuquerque Police Department ("APD") patrol units stopped the Kia and detained Plaintiff for an unspecified reason. *Id.* ¶ 17. The owner of the Kia declined to press charges and the District Attorney declined to approve a warrant to arrest Plaintiff for stealing the vehicle. *Id.* ¶¶ 18-20. The officer who had detained Plaintiff, Defendant Stone, obtained a search warrant for the vehicle, and upon finding that it was "very clean and did not have any items inside," determined that Plaintiff had "tampered with the evidence in the Kia." *Id.* ¶ 21.

Plaintiff met with Defendant Langston, his probation and parole officer, on May 31, 2020. *Id.* ¶ 26. Defendant Langston knew that Plaintiff had had contact with APD officers on May 28, 2020, and had earlier approved extending Plaintiff's curfew past 9:00 p.m. to

_____

[3] The Court cites to the paragraph numbers beginning under Subheading A on page 3 of the Complaint.

accommodate Plaintiff's employment. *Id.* ¶¶ 24-25. Defendant Langston indicated that Plaintiff's parole term was going well and did not inform Plaintiff of any pending violations. *Id.* ¶ 26. Plaintiff also alleges that he was wrongfully on parole at this time despite the State's jurisdiction over him expiring in September of 2016 and that Defendant Langston was aware of this. *Id.* ¶¶ 22-23.

In retaliation for Plaintiff's speech at the protest, Defendant Stone contacted Defendant Langston to find out the terms of Plaintiff's parole and find technical violations for which Defendant Stone might be able to arrest him. *Id.* ¶ 31.[4] On June 1, 2020, APD officers including Defendant Stone followed Plaintiff undercover without probable cause or reasonable suspicion that he had committed any crimes. *Id.* ¶¶ 32-33. They followed him into a liquor store, then put on their police vests and arrested him for parole violations. *Id.* ¶ 33. Meanwhile, according to Plaintiff's parole record, Defendant Langston did not issue any new violations until after this arrest took place; instead, he inserted violations that allegedly occurred in January and February 2020, without notifying Plaintiff within the required five-day period. *Id.* ¶ 34. Plaintiff was booked into jail and placed into solitary confinement, and the deputy chief of police referred to him using a racial slur. *Id.* ¶¶ 35-36.

Plaintiff was transferred to Central New Mexico Correctional Facility on June 4, 2020. *Id.* ¶ 40. He alleges that several irregularities took place related to his parole hearing: he was given inadequate notice, faced delays or denials when attempting to speak to his legal counsel, and was not given access to counsel at the parole hearing itself. *Id.* ¶¶ 42-53. On or about the day of Plaintiff's transfer, Defendant Langston filled out a "Parole Violation Scoring Form" which

---

[4] Paragraph 31 refers to violations of Plaintiff's "probation," Doc. 1-1 ¶ 31, which appears to be a mistake as Plaintiff otherwise alleges he was on parole, not probation, *id.* ¶ 2.

stated that Plaintiff was an absconder with an active gang membership and indicated the highest level Austin Risk Score, despite the fact that Defendant Langston had recently met with Plaintiff and had not identified any of these issues. *Id.* ¶ 54. One of the members of the parole board "emphatically stated" that the violations of which Plaintiff was accused were technical in nature and not the sort that would normally justify a remand into incarceration. *Id.* ¶ 58. Nonetheless, the board voted to sentence Plaintiff to the remainder of his parole term. *Id.* ¶ 60.

## LEGAL STANDARD

### I.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The court rules on a motion for judgment on the pleadings using the same standard as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. *Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004). Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally

sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

## II.  Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat qualified immunity, a plaintiff must assert facts that rebut the presumption of the officer's immunity from suit. *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001). The plaintiff carries the burden of showing that (1) the public official violated a constitutional or statutory right and (2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both in order to avoid qualified immunity, *Olsen*, 312 F.3d at 1304. As with other motions to dismiss, to survive a motion to dismiss based on qualified immunity, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987). The action at issue need not have been previously declared

unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422

F.3d 1059, 1069 (10th Cir. 2005). Except for egregious circumstances in which every reasonable

officer would understand the conduct at issue to be unreasonable, unlawfulness is generally

demonstrated "when there is controlling authority on point or when the clearly established

weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-

70 (internal quotation marks omitted). Qualified immunity provides "ample room for mistaken

judgments" and protects all but "the plainly incompetent or those who knowingly violate the

law." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

Taking the standards together, "[t]o survive a motion for judgment on the pleadings based

on qualified immunity, plaintiffs 'must allege sufficient facts that show—when taken as true—

the defendant plausibly violated [their] constitutional rights, which were clearly established at

the time of violation.'" *Hunt v. Montano*, No. 20-2042, 2022 WL 2444430, at *4 (10th Cir. July

6, 2022) (quoting *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)).

## DISCUSSION

Defendant Langston raises the defense of qualified immunity. Plaintiff attacks that

assertion procedurally and substantively. The Court addresses Plaintiff's procedural arguments

first.

## I. <u>Procedural Arguments</u>

Plaintiff argues that Defendant Langston prematurely filed his motion for judgment on

the pleadings, as the pleadings had not yet closed at the time Defendant Langston filed the

motion.[5] Doc. 32 at 2. A party may not file for judgment on the pleadings until the pleadings are

---

[5] Plaintiff asserted in his response that Defendant Langston "filed an Answer to the Complaint on
March 11, 2022." Doc. 32 at 2 n.2. "March 11" appears to be a typographical error or a

closed—that is, until all defendants have answered the complaint or been dismissed. *Santa Fe Alliance for Pub. Health & Safety v. City of Santa Fe, N.M.*, 993 F.3d 802, 809 n.3 (10th Cir. 2021). Here, all but one Defendant had filed an answer by the time Defendant Langston filed his motion. *See* Docs. 10, 20 (one defendant answered jointly with Defendant Langston on January 14, and two others answered even earlier). Although Defendant Aaron Vigil had not filed an answer when Defendant Langston filed his February 11 motion for judgment on the pleadings, eight days earlier, on February 3, 2022, Plaintiff had agreed to dismiss Defendant Vigil. *See* Doc. 22 n.1 (joint status report documenting this agreement). Consistent with this agreement, on February 17, the parties filed, and the Court granted, the parties' joint motion to dismiss Defendant Vigil. *See* Docs. 28, 29. Thus, although Defendant Langston filed his motion while Defendant Vigil was still in the case and had not filed an answer, Plaintiff suffered no prejudice from Defendant Langston's six-days-early filing. As of February 3, when Plaintiff agreed to dismiss Defendant Vigil, Plaintiff knew Defendant Vigil would not be filing an answer. Therefore, at the time Defendant Langston filed his motion for judgment on the pleadings, all Defendants who Plaintiff knew would be remaining in the case had filed their answers. The Court will treat Defendant Langston's motion as having been appropriately filed after the parties' February 3 agreement to dismiss Defendant Vigil.

The second preliminary matter Plaintiff raises is the standard of review for a motion for judgment on the pleadings. Plaintiff states: "Only undisputed facts from the pleadings can be considered." Doc. 32 at 3. Yet, Plaintiff also acknowledges that "when deciding a Rule 12(c)

---

misunderstanding; Defendant Langston filed his answer on January 14, 2022. Doc. 20. Despite this error, the undisputed facts support the point on which Plaintiff basis his argument: Defendant Langston filed his motion for judgment on the pleadings before all Defendants who were in the case at that time had filed an answer.

motion, the court applies the same standard as that applicable to a 12(b)(6) motion." *Id.* The Rule 12(b)(6) standard, of course, does not ask whether the facts in the pleadings are undisputed.

It is true that a Rule 12(c) motion may ask a court to grant judgment where "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (abrogated on other grounds); *see also Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). But Defendant Langston asked the Court to dismiss the complaint for failure to state a claim upon which relief can be granted. Doc. 25 at 5. The federal rules clearly permit him to do so. *See* Fed. R. Civ. P. 12(h)(2)(B) (a Rule 12(c) motion is an appropriate vehicle to raise the defense of failure to state a claim upon which relief can be granted). The standard of review for such a motion is "the same standard that applies to a Rule 12(b)(6) motion." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1302 (10th Cir. 2021) (internal quotation marks omitted); *see also Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019); *Leiser v. Moore*, 903 F.3d 1137, 1139 (10th Cir. 2018); *McCracken v. Progressive Direct Ins. Co.*, 896 F.3d 1166, 1172 (10th Cir. 2018); *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). Therefore, the Court examines whether the complaint states a claim upon which relief can be granted, taking the factual allegations in Plaintiff's complaint as true, regardless of whether they are disputed.

## II.  Qualified Immunity

### A. Fourth Amendment Claim (Count VI)

Plaintiff makes three arguments in support of his claim that Defendant Langston violated his rights under the Fourth Amendment. The Court will address each of these arguments in turn.

1.   Defendant Langston's Alleged Violation of Parole Office Policy

Plaintiff's initial argument is that Defendant Langston violated his Fourth Amendment rights by violating parole office policy. Doc. 32 at 11. This argument fails for two reasons. First, although Plaintiff makes this argument in his response brief, he does not advance this theory in his complaint. Therefore, Plaintiff does not state a claim under this theory. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (in the context of qualified immunity, a complaint must contain "enough allegations to give the defendants notice of the theory under which their claim is made"). Second, even if Plaintiff had advanced this theory in his complaint, he cites to no case that would place every reasonable parole officer on notice that authorizing an arrest warrant in violation of an internal policy is tantamount to violating the United States Constitution. Nor is the Court aware of any such case. Therefore, this theory also fails at the second prong of the qualified immunity analysis.

2.   Defendant Langston's Decision to Issue and Sign the Second Arrest Warrant

Plaintiff next asserts that Defendant Langston violated his Fourth Amendment rights when he issued and signed an arrest warrant after Plaintiff was already arrested. Doc. 32 at 11. Plaintiff also makes this allegation in his complaint. Doc. 1-1 ¶ 85. To the extent Plaintiff's claim is that Defendant Langston never should have arrested him in the first place, this argument fails to address the constitutionality of Plaintiff's arrest under the first warrant. The fact that a superseding warrant was issued after Plaintiff was already arrested does not change the analysis of whether Plaintiff was arrested in violation of the Fourth Amendment. If the initial warrant was sufficient to take Plaintiff back into custody, the subsequent warrant was not "conjured up" to remedy any deficiencies because the first warrant already sufficed. *See* Doc. 32 at 11. As such, Plaintiff has failed to state a claim that Defendant Langston violated his Fourth Amendment right

to be free from an unreasonable seizure. The first prong of qualified immunity therefore bars this Fourth Amendment claim against Defendant Langston.

To the extent Plaintiff means to direct his argument at his continued detention rather than his initial detention, he fares no better. First, if this is the basis of Plaintiff's theory, the allegations in Plaintiff's complaint are insufficient to provide Defendant Langston notice of this argument. Plaintiff's failure to include such allegations in his complaint causes this theory to fail at the first prong of a qualified immunity analysis. And, even if Plaintiff were to get past the first prong, Plaintiff cites no case that clearly establishes a parole officer who issues and signs an arrest warrant after a parolee is already arrested violates the Fourth Amendment. Therefore, this theory would also fail at the second prong.

3. Defendant Langston's Inclusion of "Misleading or False" Information in the Arrest Order

Finally, Plaintiff alleges Defendant Langston "provided information in the arrest order that he knew was misleading or false" and that "were material to the decision to issue the arrest order." Doc. 1-1 at ¶¶ 86-87.[6] Arrest warrants issued in connection with criminal charges, to satisfy the Fourth Amendment's requirements, must be supported by no more than probable cause. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). Plaintiff, however, was not charged with a criminal violation; instead, he was arrested for violating his conditions of parole. And, parolees

---

[6] Notably, Plaintiff makes no allegation that Defendant Langston ever submitted this information, or needed to submit this information, to any other person with authority to authorize the arrest warrant. If the person with authority to issue an arrest warrant for Plaintiff and who did issue an arrest warrant for Plaintiff was Defendant Langston himself, Plaintiff's allegation could not be predicated on a theory that Defendant Langston intended to mislead the person who authorized and issued the arrest warrant. This, of course, would not vindicate a decision to predicate an arrest on false or misleading information. It does, however, highlight differences between what is necessary to obtain a warrant for a parolee's arrest and what is necessary to obtain an arrest warrant against a person alleged to have committed a crime.

have "more limited Fourth Amendment rights" that are "not coextensive with the rights of ordinary citizens." *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008) (citation omitted).

Indeed, the Tenth Circuit has found that parolees remain in "constructive custody"— indicating that arresting a parolee for parole violations does not require the same standard of probable cause as an ordinary citizen. *Id.* (quoting *Baumhoff v. United States*, 200 F.2d 769, 770 (10th Cir. 1952)); *see also United States v. Lewis*, 71 F.3d 358, 361 (10th Cir. 1995) (explaining that the Fourth Amendment's protections of parolees are more limited, which limits their expectation of privacy and establishes a different warrantless-search analysis than for a free citizen); *Neilsen v. McElderry*, No. 18cv1538, 2019 WL 3712029, at *11 (D. Colo. Aug. 7, 2019) ("Whether Plaintiff was a parolee or an incarcerated prisoner is irrelevant to the situation at hand. The Court agrees with Defendant and is persuaded by the line of cases holding that the retaking of either a parolee or convicted inmate does not constitute an arrest for Fourth Amendment purposes."), *aff'd*, 823 F. App'x 575 (10th Cir. 2020); NMSA § 31-21-10(E) ("Every person while on parole shall remain in the legal custody of the institution from which the person was released.").

Defendant Langston argues he "is entitled to qualified immunity on the arrest claim because detention of a parolee for parole violations does not constitute a cognizable arrest or seizure for 4th Amendment purposes under clearly established law." Doc. 25 at 19. Plaintiff responds that Defendant Langston's argument that "there was no need for probable cause to support an arrest of Mr. White because Mr. White was on parole" is "a red herring." Doc. 32 at 12. Plaintiff acknowledges that, while the rights of parolees "are not coextensive with ordinary citizens, [they] are still protected from unreasonable seizures." *Id*. And, Plaintiff continues, Defendant Langston's conduct caused Plaintiff to be subject to an unreasonable seizure. *Id*.

In arguing that Defendant Langston's authorization of an arrest warrant violated his Fourth Amendment rights, Plaintiff does not address what minimum foundation Defendant Langston would need to support the arrest warrant. Regardless of what minimum foundation is necessary to support an arrest for the parole violation allegations Plaintiff contests, however, sufficient foundation exists to support an arrest for the parole violation allegations Plaintiff does not contest. In other words, because Plaintiff does not dispute that he committed at least some of what he characterizes as technical violations listed in the arrest warrant, the Court need not resolve what minimum foundation must exist to support an arrest for a parole violation.

Plaintiff's complaint alleges that Defendant Langston provided misleading and false information for the arrest order, such as "that Plaintiff violated curfew restrictions when he knew that provision had been waived for Plaintiff." Doc. 1-1 ¶ 86. Plaintiff also alleges that the warrant should have included the fact that Defendant Langston "was time-barred by NMCD policy from including ISP [intensive supervision program] conditions as a violation in an arrest order." *Id.* In Plaintiff's response to the motion to dismiss, Plaintiff also adds: "Both warrants omitted the crucial facts that . . . the owner of the Kia declined to press charges; the DA declined an APD warrant connected to the car; it was known to Defendant Langston that Mr. White was engaged in protest activity, which garnered police presence; and Mr. White was performing so well in his parole that the decision was made to discontinue monthly meetings." Doc. 32 at 11.[7]

In the analogous context of seeking an arrest warrant for a crime, "[a]ffiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard

---

[7] While these allegations do not appear in the complaint in count VI in connection with Defendant Langston, the Court will evaluate them in its analysis because the result is the same. Including these facts in the Court's analysis aids in efficient resolution of this matter because an amendment to incorporate these facts would not affect the outcome.

for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause. In such a situation, we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) (citation omitted); *see also United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010). Therefore, even applying the more stringent standard that applies to obtain an arrest warrant for a crime, the Fourth Amendment question with respect to Defendant Langston examines whether the "corrected" version of the warrant affidavit, stating that curfew restrictions had been waived, the owner of the allegedly stolen car had declined to press charges, and that monthly parole meetings had been discontinued—*and* including all the information on violations that Plaintiff does not challenge—would still support retaking him into custody.

On their face, the arrest warrants on June 1 and June 2, 2020 contain allegations of parole violations that Plaintiff has not challenged in the complaint or briefing. Doc. 25-1; Doc. 20-2 at 1.[8] In fact, the complaint never alleges that Plaintiff committed no parole violations. The complaint states instead that the parole violations in question were "technical." *See, e.g.*, Doc. 1-1 ¶¶ 31, 44, 55, 58, 63, 67, 85. Plaintiff makes no attempt to show that warrants setting forth

---

[8] "Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (internal citations omitted). "This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Id.* (citing *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)). The arrest warrant (what state probation refers to as an "arrest and hold warrant") attached to the answer is a public record about which the Court takes judicial notice.

unchallenged allegations of parole violations (such as failure to report contact with law enforcement, failure to follow lawful orders, and communicating with inmates) are insufficient under the Fourth Amendment, even assuming those warrants also contained meritless allegations (such as those related to curfew and auto theft). Removing all the possibly false or misleading language, and adding in the language that Plaintiff claims was necessary for context, the warrant still contains violations of Plaintiff's parole terms and, therefore, reasonably justifies his retake into custody. Thus, the Court finds Plaintiff has not met his burden to state a Fourth Amendment claim based on omissions or false statements in the arrest warrants. *See Puller*, 781 F.3d at 1196 (when a defendant raises the defense of qualified immunity, Plaintiff bears a "heavy burden" to establish a violation of a constitutional right).

Even if the complaint alleged a violation of Plaintiff's Fourth Amendment rights, however, Plaintiff must additionally show that the right is clearly established—prong two of qualified immunity—and he cannot do so. The Court reaches this conclusion despite rejecting Defendant's argument that *Jenkins v. Currier* establishes that detaining a parolee for parole violations does not qualify as an arrest or seizure under the Fourth Amendment. Doc. 25 at 19-20 (citing *Jenkins v. Currier*, 514 F.3d 1030 (10th Cir. 2008)).

*Jenkins* involved a plaintiff who was erroneously released after his federal sentence when he was supposed to have been sent to state custody to finish out the remaining years of his state sentence. 514 F.3d at 1032. State officers realized the error, apprehended Jenkins without a warrant, and sent him to a state correctional facility to finish out his time, with credit for his street time since the error in releasing him was not his fault. *Id.* Jenkins sued for Fourth Amendment violations because he was taken into custody without a warrant or probable cause. *Id.* The Tenth Circuit held that incarcerated individuals and parolees had more limited Fourth

Amendment rights than the general population, *id.* at 1033, that the state of Oklahoma retained custody over Jenkins despite his erroneous release, *id.* at 1034, and that no warrant was therefore necessary to return him to physical custody, *id.*

This case, however, is not entirely on point. Although the opinion references parolees, Jenkins was not a parolee himself; he was supposed to be incarcerated and had been released by mistake. Plaintiff's allegations, that he was supposed to be a free man but was on parole by mistake, are the opposite. *Jenkins* holds that individuals *who are erroneously released from custody* may be re-apprehended, without a warrant or probable cause, to serve the time they have already been sentenced to serve and *should* have been serving at the moment of arrest. In contrast, Plaintiff in this case was not supposed to be incarcerated; according to his complaint, he was not even supposed to be on parole, yet he was brought back into custody based on a pretextual arrest warrant.

Plaintiff, on the other hand, argues that *Trask v. Franco*, 446 F.3d 1036 (10th Cir. 2006) clearly established that parole officers who improperly take action that leads to a wrongful arrest are liable under the Fourth Amendment. Doc. 32 at 9-10. *Trask* involved a plaintiff, Carly Bliss, who a judge discharged from probation a few months early based on incorrect information Ms. Bliss's probation officer had provided the court. 446 F.3d at 1040. Unlike the plaintiff in *Jenkins*, once the judge discharged Bliss, Bliss had no time in custody or on probation left to serve. *See id.* Unfortunately for the probation officer in *Trask*, he never received the court's discharge order and so incorrectly assumed that the judge caught his error and chose not to sign the documents— thereby leaving Bliss on probation. *Id.* In reality, the judge *had* signed and filed the discharge order but had not forwarded a copy back to the officer; legally, Bliss was a free woman. *Id.* Unaware that Bliss was no longer on probation, officers (including the one who had committed

the error) conducted a field inspection of Bliss's residence, which she shared with her boyfriend. *Id.*

Bliss and her boyfriend sued for violations of the Fourth Amendment claiming this search was nonconsensual and unreasonable. *Id.* at 1041. The Tenth Circuit found that because Bliss was no longer on probation, she enjoyed her full right to privacy, "including the right to be free from warrantless searches of her home." *Id.* at 1044. Since the right to be free of warrantless searches of one's home was clearly established in June 2001 when the search took place, and since genuine issues of material fact existed as to whether it was reasonable for the officers to believe that Bliss was still on probation, qualified immunity did not shield the officers from liability. *Id.*

Plaintiff argues that *Trask* clearly establishes a constitutional violation when a defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights." Doc. 32 at 9 (citing *Trask*, 446 F.3d at 1046). However, this argument reads *Trask* too generally. The critical difference between *Trask* and the case at hand is that, in *Trask*, Bliss was legally a free woman and if the officer had exercised greater diligence, he would have known this information. Here, in contrast, the complaint does not plead such facts. The complaint states that Defendant Langston "was cognizant that Mr. White had been placed back on parole after his jurisdiction had expired." Doc. 1-1 ¶ 23.

Thus, unlike the plaintiff in *Trask*, the face of the complaint here makes clear that Plaintiff "had been placed back on parole" at the time Defendant Langston was supervising him. And, Plaintiff makes no allegation that it was Defendant Langston who took any action to place him back on parole or that Defendant Langston had the ability to correct the error and take him

off of parole. In sum, the complaint alleges that even though Plaintiff had been placed on parole by some unknown person, and was on parole in May of 2022, the unnamed person who placed him on parole did so in error. Critical to the present analysis is that, right or wrong, when Defendant Langston was tasked with supervising Plaintiff, Plaintiff "had been placed back on parole." Doc. 1-1 ¶ 23; *see also* Doc. 25-4 (Certificate of Parole).[9] Although a New Mexico district court later identified the error, that Order is dated months after the May and June 2020 events that give rise to Plaintiff's claim. *See* Doc. 1-1 Ex. 1 (dated October 2, 2020).

Defendant Langston was required to follow the court order in effect at the time he acted, and at that time, the order identifying the error had not yet been issued. Whereas the officers in *Trask* potentially could have discovered the error and Bliss's status as a free woman by investigating the record, which contained a signed and filed discharge order, it is not clear that the same is true for Defendant Langston. That is, while Plaintiff argues that clearly established law makes it unconstitutional for a parole officer to "improperly set in motion a series of events that leads to a wrongful arrest," Doc. 32 at 9, the complaint does not contain enough facts to make it clear that Defendant Langston knew or should have known that his actions at issue here would lead to a wrongful arrest.

In sum, Plaintiff "does not cite any case, from any jurisdiction, holding that taking a parolee into custody constitutes an arrest for purposes of the Fourth Amendment. Nor does he cite any case, from any jurisdiction, holding that a parole officer must have probable cause or comply with state law in order to take a parolee into custody without running afoul of the Fourth Amendment." *Cappelli v. Hoover*, No. 21-1110, 2022 WL 363947, at *4 (10th Cir. Feb. 8,

---

[9] As discussed above, the Court can take judicial notice of this public record, which Defendant attached to his motion, without converting the motion to dismiss into a motion for summary judgment. *See Tal*, 453 F.3d at 1265 n.24.

2022). Because Plaintiff cannot demonstrate that Defendant Langston's actions violated clearly established law, Defendant Langston is immune from suit on the Fourth Amendment allegations (count VI).

### B. Conspiracy to Violate Civil Rights (Count VII)

Count VII of Plaintiff's complaint alleges conspiracy to violate civil rights against all Defendants. Doc. 1-1 at 15. "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities;[10] (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

Defendant Langston argues that Plaintiff's conspiracy allegations are conclusory and that because Plaintiff fails to establish an underlying constitutional violation, the Section 1985(3) claim must also fail. Doc. 25 at 23-24. Plaintiff responds that Section 1985 violations are clearly established in this circuit "when Plaintiff is a member of a racial and national minority and alleges that he has been conspired against because of his 'race, political and social beliefs, and activities on behalf of his own and other minorities.'" Doc. 32 at 13 (citing *Martinez v. Winner*, 771 F.2d 424, 440 (10th Cir. 1985)).

Like Defendant Langston, the Court focuses on the second element of a conspiracy claim: whether Plaintiff states a claim that Defendant Langston acted with the intent to deprive Plaintiff of equal protection or equal privileges and immunities. In his brief, Plaintiff makes several

---

[10] This includes rights found elsewhere in the Constitution, such as the First Amendment. *See United Brotherhood of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983) ("The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment.").

assertions related to this element.[11] *See* Doc. 32 at 13-15. In deciding whether Plaintiff states a claim in his complaint, however, the Court must look at what factual allegations are in the complaint, not at what factual allegations are in Plaintiff's response brief. And many of the assertions Plaintiff makes in his response brief are not in his complaint.

Count VII brings all allegations against "Defendants" collectively. Doc. 1-1 ¶¶ 90-95. Although Defendant Langston is among the Defendants named in count VII (Conspiracy), Plaintiff does not include him in counts I or III (claims for First Amendment retaliation). Thus, in looking at Plaintiff's complaint, the Court's focus is on allegations that Defendant Langston conspired to retaliate against Plaintiff for the exercise of his First Amendment rights, not that Defendant Langston directly violated Plaintiff's First Amendment rights.

Setting aside for a moment the paragraphs preceding count VII that Plaintiff incorporates into count VII by reference, count VII does not specify what Defendant Langston, individually, is alleged to have done. Use of the collective term "Defendants," with no distinction as to what acts are attributable to whom, does not provide fair notice to the individual defendants of the grounds for the claims made against them. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair

---

[11] For example, he alleges: "Defendant Langston conspired with APD officers in a manner that deviated from protocols to charge Mr. White with technical parole violations, not because of a grave concern that he may have engaged in technical violations, but rather to retaliate against him for his political activity, as a Black man, in support of Black Lives Matter," Doc. 32 at 13-14; "Evidence supports that Defendant Langston was motivated by Mr. White's political activity because Defendant Langston testified at Mr. White's parole revocation hearing that Mr. White's violation was connected to his protest activity, albeit trying to distinguish his speech from his 'behavior,'" Doc. 32 at 14; and "Defendant Langston intentionally conspired with APD in order to effectuate a pretextual arrest of Mr. White, for the purpose of limiting his protected First Amendment speech." Doc. 32 at 15.

notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.*

Turning to the earlier paragraphs that Plaintiff incorporates by reference, the complaint alleges that, initially, Defendant Langston took no action against Plaintiff for parole violations that occurred in January and February of 2020. Doc. 1-1 ¶ 34. In fact, when Defendant Langton met with Plaintiff on May 31, 2022 (after the May 28 Black Lives Matter protest but before the June 1 arrest warrant), "not only did Defendant Langston not inform [Plaintiff] of any pending violations, but he indicated that his parole term was going well." *Id.* ¶ 26. In the meantime, Plaintiff essentially alleges Defendant Stone was having trouble finding someone with authority to authorize Plaintiff's arrest. *See id.* ¶¶ 27, 31. As a result, Defendant Stone "investigated Mr. White's status on probation and contacted Mr. White's probation officer, Defendant Langston, to understand Mr. White's conditions of probation and to find technical violations" for which Defendant Stone could arrest Plaintiff. *Id.* ¶ 31. Then, "Defendant Langston, with knowledge of the proper process for initiating parole violations, provided information to Defendants Brown and/or Stone that he knew would lead to the arrest of Plaintiff without adherence to the procedure for parole violations." *Id.* ¶ 81. Further, "after Plaintiff had already been arrested for technical parole violations," Defendant Langston "drafted and signed an arrest order" and "provided information in the arrest order that he knew was misleading or false." *Id.* ¶¶ 85-86.

Missing from these allegations is any information about what Defendant Stone and Defendant Langston "conspired" about. It is not clear from the complaint that Defendant Stone convinced Defendant Langston to authorize Plaintiff's arrest in retaliation for Plaintiff's speech, as opposed to convincing Defendant Langston that Plaintiff should be arrested for reasons unrelated to his speech. Although the complaint alleges Defendant Stone was motivated to

retaliate because of Plaintiff's speech, *id.* ¶ 31, it conspicuously lacks a similar allegation for Defendant Langston. That is, the complaint does not allege what the second element requires: that the reason Defendant Langston took action against Plaintiff was to deprive or punish Plaintiff for engaging in speech about the need for racial equality. Nor does the complaint allege that Defendant Langston knew about Plaintiff's protected speech.[12] As such, Plaintiff fails to state a claim against Defendant Langston under count VII.

Given that Plaintiff has failed to state a claim for a constitutional violation, the Court need not address the second prong of the qualified immunity analysis. Nonetheless, as the Court sets forth above in its analysis of Plaintiff's Fourth Amendment claims against Defendant Langston, Plaintiff does not dispute that he committed technical parole violations. Assuming Plaintiff legally could be arrested for these technical parole violations, the question becomes whether clear precedent places every reasonable parole officer on notice that, even where the parole officer has legal grounds to arrest a parolee, the parole officer can be liable for First Amendment retaliation when those grounds are merely technical.[13] Plaintiff cites no controlling authority, and the Court is aware of none, that would place every reasonable parole officer on notice that arresting Plaintiff for these types of technical violations under the circumstances

---

[12] While the complaint alleges that Defendant Langston was "aware that Mr. White had contact with Defendant APD officers on May 28, 2020," Doc. 1-1 ¶ 25, it does not give details to establish that Langston knew the "contact with APD" constituted protected speech rather than investigation of a crime.

[13] Plaintiff alleges in his complaint that "one of the three members of the New Mexico Probation and Parole Board who were present emphatically stated that the allegations against Mr. White were technical, and that the Board did not remand parolees to incarceration for technical violations." Doc. 1-1 ¶ 58. However, he does not allege that "objective evidence exists that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" or that such a standard applies to parole violation arrests. *Nieves v. Bartlett,* 139 S. Ct. 1715, 1727 (2019).

Plaintiff alleges would constitute First Amendment retaliation. Thus, his claim for civil conspiracy against Defendant Langston fails.

## CONCLUSION

The Court GRANTS Defendant Langston's motion for judgment on the pleadings. The Court dismisses all counts in the complaint against Defendant Langston without prejudice. To the extent Plaintiff wishes to amend his complaint consistent with this Order, he may file a motion for leave to amend within 30 days of the entry of this Order.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE